IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SYDNEY LEIGHLITER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 17-1510 |
| | ) |
| v. | ) Judge Cathy Bissoon |
| | ) |
| CITY OF CONNELLSVILLE, | ) |
| *a municipality of the Commonwealth* | ) |
| *of Pennsylvania, et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Pending before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint (hereinafter "Motion to Dismiss," Doc. 24) filed by Defendants City of Connellsville, City of Connellsville Police Department, James Capitos,[1] and Thomas Patton (collectively, the "Moving Defendants"[2]) and the Response in Opposition (hereinafter "Response," Doc. 28) of Plaintiff Sydney Leighliter ("Leighliter" or "Plaintiff"). For the reasons that following, Moving Defendants' Motion to Dismiss (Doc. 24) will be GRANTED in part and DENIED in part.

**I. MEMORANDUM**

Plaintiff initiated the instant action in November of 2017. (Doc. 1.) After Moving Defendants filed a Motion to Dismiss (Doc. 13), Plaintiff filed an Amended Complaint on March 19, 2018. Moving Defendants again sought to dismiss the Amended Complaint, and Plaintiff, after seeking leave from the Court, filed her Second Amended Complaint on April 30, 2018

---

[1] Defendant James Capitos' last name appears to be misspelled in the case caption. The Court will refer to him as the parties do.
[2] Defendant Ryan Reese ("Reese" or "Defendant Reese") is unrepresented and has not sought dismissal of Plaintiff's claims.

1

(hereinafter "SAC," Doc. 23). Moving Defendants moved to dismiss the SAC on May 21, 2018. (Doc. 24.)

A. **BACKGROUND**

Plaintiff brings 18 causes of action against Defendants, asserting claims under 42 U.S.C. § 1983 for violations of her Fourth and Fourteenth Amendment rights, as well as claims under the laws of the Commonwealth of Pennsylvania and its Constitution. (SAC at ¶¶ 68–193.) As liability is contingent on the relationships between and history of the Defendants, the Court will recount them before summarizing Plaintiff's core allegations.

1. **Officer Ryan Reese and the Connellsville Police Department**

Defendant City of Connellsville (or the "City") is a municipality located in Fayette County, Pennsylvania. (SAC at ¶ 4.) Defendant City of Connellsville Police Department ("Connellsville Police") is a municipal agency of Connellsville, and the employer of the individual defendants in this case: James Capitos ("Capitos" or "Defendant Capitos"), Ryan Reese ("Reese" or "Defendant Reese"), and Thomas Patton ("Patton" or "Defendant Patton"). (Id. at ¶ 5.) During the relevant time period, Reese and Patton were police officers with the Connellsville Police, and Capitos was the Chief of the Connellsville Police. (Id. at ¶¶ 6–8.) As Chief, Capitos oversaw day-to-day operations of the Connellsville Police, supervising officers, training officers, setting policies and directing the activities of all employees. (Id. at ¶ 12.)

Reese began his tenure as an officer with the Connellsville Police in September of 2000. (Id. at ¶ 14.) Throughout his career, Reese's work focused on the investigation of drug-related crimes, and from 2009 to 2012, he supervised the Fayette County Drug Task Force ("Task Force"). (Id. at ¶ 15.) Reese was removed from his supervisory position in September 2012, after an investigation confirmed allegations that he engaged in sexual conduct with female

2

confidential informants, including an 18-year-old female. (Id. at ¶ 16.) Defendant Capitos was aware of this conduct and provided a report outlining a previous suspension of Reese for "sexual contact with a female defendant after altering a report of her blood alcohol results." (Id. at ¶¶ 16–17.) In November of 2012, Reese admitted to having sexual relations with two female confidential informants and was suspended from the Task Force. (Id. at ¶ 18.)

After Reese's suspension, the Task Force and Capitos were made aware of credible allegations by six other women of sexual misconduct by Reese while on the Task Force. (Id. at ¶¶ 18–20.) In light of the sexual misconduct admitted to by Reese and uncovered by the Task Force, Reese was dismissed from the Task Force in February of 2013. (Id. at ¶ 20.) At that time, the Mayor of Connellsville and Capitos were made aware of the reasons for Reese's dismissal (Id. at ¶ 21.) Plaintiff alleges, however, that no restrictions were placed on Reese's ability to interact with female informants or defendants in carrying out his regular duties as an officer with the Connellsville Police, and no other action was taken to address the findings. (Id. at ¶ 22.) Rather, Reese continued to serve in a supervisory capacity with no oversight of his activities. (Id. at ¶ 23.)

### 2. Plaintiff's Core Allegations

On October 3, 2013, Plaintiff alleges that Reese and Patton, along with other officers, forcibly entered her mother's residence early in the morning, searched the residence and found drug paraphernalia and a shotgun. (SAC at ¶¶ 24–25.) Neither Plaintiff's parents nor a legal guardian was present and Plaintiff was 15 at the time. (Id.) Defendant Reese took Plaintiff's cell phone number and told her she would be charged with possession of paraphernalia. (Id. at ¶ 26.) Neither Plaintiff's parents nor Children and Youth Services were made aware of the search by police or what was found in the home. (Id. at ¶ 27.)

3

Following the October 3rd encounter, Reese gave Plaintiff's boyfriend his phone number so Plaintiff and her boyfriend could each call Reese about "getting out of" criminal charges pending against them. (Id. at ¶ 28.) Reese started coming to Plaintiff's residence and calling her on the phone, and on November 12, 2013, Plaintiff met Reese at the Connellsville Police Department Gym to talk about the criminal charges she faced. (Id. at ¶ 29.) Plaintiff went to the gym, and while removing a weight vest from her, Reese placed his hand inside her shirt and bra and touched her breast. (Id. at ¶ 30.)

On November 20, Plaintiff alleges that Reese brought her a cookie and a t-shirt "with a law enforcement logo" for her sixteenth birthday. (Id. at ¶ 31.) Later, in December, Reese picked up Plaintiff in his car and suggested she "work off" the criminal charges pending against Plaintiff and her boyfriend "by performing sexual favors." (Id. at ¶ 32.) Reese "kissed her and reached his hand down her pants" without Plaintiff's consent. (Id.) When making contact with Plaintiff, Reese sent her text messages and called her from the Connellsville Police station and his personal cell phone. (Id. at ¶ 49.) Text messages from Reese to Plaintiff told her "to not tell anyone" about the two of them were doing. (Id.)

In January 2014, Plaintiff alleges that Reese began to use her as a confidential informant to make controlled drug purchases without seeking permission from a parent or guardian. (Id. at ¶¶ 33–34.) In connection with this work, Plaintiff was subjected to a "pat-down search" by Reese while alone in his office which included touching Plaintiff's breast under her shirt and bra and her buttocks over her clothing before and after the drug purchase. (Id. at ¶ 35.) Plaintiff avers Reese made a report of her work as a confidential informant and that Capitos "reviewed and approved" the report. (Id. at ¶ 36.)

Patton, along with Reese, participated in a second controlled drug purchase Plaintiff made in February 2014 utilizing marked funds. (Id. at ¶¶ 37–39.) Before and after the purchase, Reese completed a pat down search of Plaintiff, though on this occasion it was "conducted differently" and took place "in the common area of the police station." (Id. at ¶ 40.) Patton questioned Reese about using a juvenile as a confidential informant, but after Reese discounted his concerns, Patton used Plaintiff as an informant. (Id. at ¶ 41.)

After the second controlled drug purchase, Reese drove Plaintiff to a residence in Mount Pleasant in a Connellsville Police patrol car. (Id. at ¶ 44.) On the way there, Reese told Plaintiff she could "earn a dismissal of the criminal charges" by performing oral sex on him. (Id. at ¶ 45.) Plaintiff did so. (Id.) On February 12, 2014, Plaintiff and her mother met with a Pennsylvania State Trooper and "disclosed her contacts" with Reese, Patton and the Connellsville Police. (Id.)

Shortly before midnight on May 16, 2014, Plaintiff avers that she went to the Connellsville Police station to meet Reese, got into his private vehicle, and drove away with him. (Id. at ¶¶ 46, 48.) Patton observed these events but did not intervene. (Id. at ¶ 47.) Plaintiff avers that Reese drove her to a nearby parking lot and engaged in sexual intercourse with her in the backseat of his vehicle. (Id. at ¶ 48.)

Plaintiff avers that Reese called her to meet him at the Connellsville Police Station and Gym while he was on duty and that it was "an open joke" that Reese was having sexual contact with her. (Id. at ¶ 50.) Plaintiff states that despite his knowledge and warnings he received about Reese's sexual contact with Plaintiff, Capitos took no action. (Id.) By disregarding the risks posed to Plaintiff by her interactions Reese, Plaintiff alleges that Capitos and the Connellsville Police "acquiesced in the improper and unconstitutional conduct." (Id. at ¶ 52.) Neither Capitos nor the City of Connellsville intervened or required training for Reese or other

5

officers regarding use of female informants. (Id. at ¶ 55.) Plaintiff avers that the conduct she was subjected to was disparate treatment based on her sex. (Id. at ¶¶ 55–56.)

In November of 2016, a jury convicted Reese of Corruption of Minors in violation of 18 Pa. C.S. § 6301. (Id. at ¶ 60.) Reese was sentenced to prison for a minimum of nine months and will be required to register as a sex offender. (Id. at ¶ 61.)

During the relevant time period, the Connellsville Police did not have a policy restricting the use of juveniles as confidential informants, nor did it have a policy restricting "sexual activity with female informants, female defendants, or female witnesses." (Id. at ¶¶ 61–64.) Plaintiff avers that the lack of policies restricting or limiting the use of juveniles as confidential informants and specifying proper conduct with female informants caused her injury. (Id.) Plaintiff also contends that the findings of the Task Force with respect to Reese, placed Capitos, the City of Connellsville and the Connellsville Police "on notice" that they needed to act. (E.g., id. at ¶¶ 55, 65.)

### B. ANALYSIS

Moving Defendants seek dismissal on the following grounds:

- Dismissal of the Connellsville Police Department because, in Section 1983 actions, a police department is considered a sub-unit of the municipality it serves and cannot be sued in conjunction with the municipality;

- Dismissal of the claims for violation of the Pennsylvania Constitution because there is no private cause of action for the damages sought by Plaintiff;

- Dismissal of all claims against Patton, who has qualified immunity, who did not participate in any deprivation of Plaintiff's constitutional rights, and who did not commit assault and battery against Plaintiff;

- Dismissal Plaintiff's unsupported claims for violation of her privacy and equal protection rights;

- Dismissal of the assault and battery and Fourth Amendment claims against Capitos;

6

- Dismissal of the municipal liability claims against the City because Plaintiff had not identified a policy or custom that caused her alleged injuries; and

- Dismissal of the punitive damages claims against the City and the individual Defendants in their official capacity.

(See Moving Defendants' Brief in Support of Motion to Dismiss, hereinafter "Moving Defendants' Brief," Doc. 25 at 2.) In her Response, Plaintiff concedes that dismissal on the first two grounds advanced by Moving Defendants is appropriate. (Response at 8.) Plaintiff also concedes that punitive damages are unavailable to her with respect to her claims against the City of Connellsville and agrees to dismiss her claims based on invasion of her right to privacy. (Id. at 17–18.)

Therefore, the Court will dismiss with prejudice the City of Connellsville Police Department from this suit,[3] all of Plaintiff's claims under the Pennsylvania Constitution (Counts 11–16), and Plaintiff's claims to the extent they are based on a violation of her "right to privacy."[4] The Court will also strike Plaintiff's demand for punitive damages against the City of Connellsville.

Before turning to the remaining grounds for dismissal, the Court will briefly lay out the applicable standard of review.

1. **Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-

---

[3] The City of Connellsville Police Department was named as a Defendant in Counts 3–5, 7–8, and 17–18 of Plaintiff's SAC.
[4] Plaintiff asserted this right, to varying degrees, in Count 2 as well as Counts 4–10.

7

pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

**2.  Analysis**

    a.  Plaintiff's Assault and Battery Claims Against Moving Defendants (Counts 17–18)

In Pennsylvania, the intentional tort of battery requires that Plaintiff show "an unconsented touching that is either harmful or offensive." Cooper ex rel. Cooper v. Lankenau Hosp., 51 A.3d 183, 191 (Pa. 2012). It is the person who touches the Plaintiff who is subject to liability. Montgomery v. Bazaz-Seghal, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999) (quoting Restatement (Second) of Torts § 18(1)). An assault is "an action that makes a victim believe that a battery is about to occur." Martin-McFarlane v. City of Philadelphia, 299 F. Supp. 3d 658, 670–71 (E.D. Pa. 2017).

There are no facts anywhere in the SAC to suggest that any of the Moving Defendants ever touched Plaintiff *at all*. (E.g., SAC at ¶¶ 180–93.) The City of Connellsville cannot commit an assault or a battery and the SAC does not allege that Capitos had contact with Plaintiff at any time. The sole encounter described in the SAC in which a Moving Defendant, Defendant Patton, was close in physical proximity to Plaintiff, he is described as a witness to a pat-down of Plaintiff, not as the actor touching her. (SAC at ¶ 41.)

As Plaintiff does not allege that any Moving Defendant touched her or made her believe that he might touch her, Counts 17 and 18 will be dismissed with prejudice (as to those Defendants).[5]

---

[5] The Court has already granted Plaintiff leave to amend, and she has filed amended complaints on two occasions in response to motions to dismiss filed by Moving Defendants. (Docs. 16, 23.) Despite the Court's Order regarding motions to dismiss (Doc. 2), Plaintiff did not elect to amend her pleadings to cure defects following after multiple opportunities to meet and confer with

b.  Plaintiff's Section 1983 Claims against City of Connellsville and Defendant Capitos (Counts 3–5, 7–8)

Plaintiff's Section 1983 claims against the City of Connellsville and Capitos allege violations of the Fourth Amendment (Counts 3, 5, 7–8) and the Fourteenth Amendment (Counts 4–5, 7–8).

1.  Plaintiff's Fourth Amendment Claims against City of Connellsville and Defendant Capitos

The Court finds that Plaintiff fails allege a Fourth Amendment violation. The Fourth Amendment protects the right of the people to be "secure in their persons . . . against unreasonable searches and seizures." U.S. Const., Amend. IV. The SAC does not allege that Plaintiff was searched or seized. Plaintiff was not arrested or otherwise seized during the relevant period and she does argue her Fourth Amendment rights were violation in connection with the search of her mother's residence on October 3, 2013.[6] (SAC at ¶¶ 24–27.) While the allegations in the SAC may violate another of Plaintiff's Constitutional rights, they do not violate the Fourth Amendment. See Stoneking v. Bradford Area School Dist., 882 F.2d 720, 726–27 (3d Cir. 1989) (unwanted or illegal sexual contact protected by liberty and personal security interests under the Fourteenth Amendment); see also Rogers v. City of Little Rock, 152 F.3d 790, 795–97 (8th Cir. 1998) (reviewing several decisions and holding sexual assault by police officers is properly analyzed under Fourteenth—not Fourth—Amendment); Martin-McFarlane, 299 F.

---

opposing counsel and the opportunity to review Moving Defendants' previous motions to dismiss. In some instances, she instead conceded these defects still remained. (E.g., Response at 8). Therefore, the Court concludes that granting additional leave in this case is unwarranted. See Lake v. Arnold, 232 F.3d 360, 373–74 (3d Cir. 2000) (A district court "has substantial leeway in deciding whether to grant leave to amend," and its discretion is "even broader" where "the court has already granted the requesting part an opportunity to amend [her] complaint.") (citations omitted).

[6] The Court expresses no opinion as to whether such a claim is viable.

Supp. 3d at 670 (dismissing Section 1983 claims under the Fourth Amendment where Plaintiff alleged she was assaulted and her bodily integrity was violated). Furthermore, in her Response, Plaintiff failed to address any of Moving Defendants' arguments or to cite any authority supporting that the core allegations here—of offensive touching and criminal sexual conduct—are proscribed by the Fourth Amendment.

Therefore, the Court will dismiss with prejudice Counts 3, 5, and 7–8 against the City of Connellsville and Capitos to the extent those counts rely on a purported Fourth Amendment violation.

2. Plaintiff's Fourteenth Amendment Claims[7] against City of Connellsville and Defendant Capitos[8]

At Counts 4–5 and 7–8 of the SAC, Plaintiff appears to set forth three theories of liability[9] against the City of Connellsville and Capitos. First, Plaintiff brings a custom or practice Monell claim (Count 4). See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 (1978). Relatedly, she alleges violations of her Constitutional rights due to a failure to train under Monell (Count 8). Third, she asserts a state-created danger claim (Count 5).

The particular constitutional rights Plaintiff alleges were violated in these Counts—her rights to "bodily integrity," to due process, and to equal protection of the laws—are all protected

---

[7] Moving Defendants briefly argue that Plaintiff's Section 1983 claims premised in her right to equal protection should be dismissed. (Moving Defendants' Brief at 17.) While Plaintiff's allegations related to these claims are also brief, the Court believes dismissal would be premature. Plaintiff has alleged, primarily in Count 7, that she was treated differently—by being targeted for sexual misconduct—in light of her sex. Furthermore, it is because of her sex that the need oversight was acute, and perhaps also because of her sex that this policy was not in fact instituted. (SAC at ¶¶ 50–56.) The Court cautions that Plaintiff will have to significantly sharpen this claim in order to survive summary judgment.
[8] A suit against a municipal official in his official capacity is considered a suit against the municipality. Brandon v. Holt, 469 U.S. 464, 471–72 (1985).
[9] The Court has attempted to discern all the possible causes of action asserted by Plaintiff despite the convoluted fashion in which they are presented in the SAC.

by the Fourteenth Amendment and were well established at the time these events took place. U.S. v. Lanier, 520 U.S. 259, 262 (1997) (due process protects personal bodily integrity and gives the right to be free from unlawful physical abuse by state actors); Rochin v. California, 342 U.S. 165, 172–74 (1952) (forcible removal of evidence from body by law enforcement offends due process); see also Doe v. Taylor Indep. School Dist., 15 F.3d 443, 455 (5th Cir. 1994); Stoneking, 882 F.2d at 726–27.

i. Custom or Practice (Count 4)

Where a municipality's "policy or custom" is contrary to federal law, the municipality is subject to liability under Section 1983. Kentucky v. Graham, 473 U.S. 159, 166 (1985). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). Where authorized decisionmakers adopt a particular course of action, it is a policy of the municipality. Id.

Plaintiff has sufficiently alleged facts that, if proven, would demonstrate that the authorized decisionmakers in the City of Connellsville adopted a policy or custom in violation of her federal rights. Specifically, the Police Chief and the Mayor[10] were aware of several instances in which the lack of oversight or guidelines regarding use of female informants, particularly juvenile female informants, may have contributed to sexual misconduct and abuse of power. (SAC at ¶¶ 18–23.) Despite notice, Plaintiff has averred that both the Chief of Police, Capitos, and the Mayor of the City of Connellsville declined to change training, to enact policies and procedures, to increase supervision or to take any other corrective action. (SAC at ¶¶ 22–23.)

---

[10] Either or both of these individuals may be a decisionmaker for purposes of Section 1983. (SAC at ¶¶ 12–13.) Indeed, Defendant concedes that the Mayor of Connellsville is a final policymaker under Pennsylvania law (Moving Defendants' Brief at 21).

11

This alleged course of action—or inaction—is sufficient at this stage to constitute municipal policy.

Alternatively, the SAC details that, by the summer of 2014, the culture within the Connellsville Police Department was such that her "open and notorious presence" was tolerated throughout the police facilities, including alone in Reese's office, with knowledge that Reese was having inappropriate sexual contact with her. (SAC at ¶¶ 12–13.) Indeed, Plaintiff avers that this sexual misconduct was a "open joke" in the Connellsville Police Department. (SAC at ¶ 50.) These allegations, if proven, are sufficient to constitute a custom of tolerating or acquiescing to unlawful misconduct with respect to police interaction with juvenile, female informants. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 n.10 (1986).

Thus, Defendant's Motion to Dismiss Count 4 as to these Defendants is denied.

ii. Failure to Train or Supervise (Count 8)

Related to her claims at Count 4, Plaintiff argues that the City of Connellsville and Capitos's failure to train or supervise officers resulted in her improper use as a juvenile informant and violations of her bodily integrity. (SAC at ¶¶ 89–91.)

To prevail under a failure-to-train theory, a plaintiff must demonstrate 1) a direct causal link between the municipal action and the violation of rights, and 2) must show that the municipal action was taken "with deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). A showing of "deliberate indifference" requires decisionmakers to have "actual or constructing notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." Connick v. Thompson, 563 U.S. 51, 62 (2011).

As discussed above, Plaintiff has alleged a disturbing pattern of the use of juvenile and female informants that was known and tolerated among police offices and police leadership. (SAC at ¶¶ 18–23.) At this stage, the Court cannot say that the City's decisionmakers failure to take action to train or supervise officer was not with "deliberate indifference" to the rights of Plaintiff. Connick, 563 U.S. at 62 (A "policy of inaction" in light of notice of violations is "the functional equivalent of a decision by the city itself to violate the Constitution.") (internal quotation marks omitted)). Further, the harm Plaintiff alleges is consistent with "the identified deficiency" in officer training. City of Canton, 489 U.S. at 391.

Moving Defendants' Motion to Dismiss Count 8 will be denied with respect to Plaintiff's Claims under the Fourteenth Amendment.

### iii. State-Created Danger (Count 5)

For a plaintiff to prevail on a Section 1983 claim that defendants violated her Fourteenth Amendment right to bodily integrity by creating a danger, the plaintiff must show that:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions . . .; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and quotation marks omitted).

As the Court understands it, Plaintiff avers that the lack of policy, regulation or oversight of the use of juvenile and female informants is the state-created danger alleged (E.g., SAC at 55–

56, 93.) Without such policies, Plaintiff—a 15-year-old girl—was used by the police in controlled criminal activity and placed in situations that allowed her to be targeted for sexual misconduct. (E.g., SAC at ¶¶ 34–35, 43.) These allegations and those recounted by the Court above, as they relate to the first three elements, are sufficient to survive dismissal. (See generally SAC at ¶¶ 18–23, 50–56.)

Regarding the final element, giving Plaintiff the benefit of the doubt, the Court cannot say as a matter of law that Capitos, and therefore the City, did not act affirmatively to create a danger to Plaintiff. D.R. by L.R. v. Middle Bucks Area Vocational Tech. School, 972 F.2d 1364, 1374 (3d Cir. 1992) (discussing the difficulty of parsing action and inaction in a state-created danger claim). To survive summary judgment however, Plaintiff must make clear which actions, rather than any alleged inactions, of the City of Connellsville and Capitos created the danger to her. Bright, 443 F.3d at 282 ("It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.").

Moving Defendants' Motion to Dismiss Count 5 on this ground with respect to Capitos and the City of Connellsville is denied.

   c. Plaintiff's Section 1983 Claims against Defendant Patton
    (Counts 1–2, 6, 9–10)

Plaintiff alleges Patton violated her Fourth Amendment (Counts 1–2, 6, and 9–10) and Fourteenth Amendment rights (Counts 6, 9–10). The Court will grant Moving Defendants' Motion to Dismiss with respect to all claims against Defendant Patton.

    1. Plaintiff's Fourth Amendment Claims Against Patton

For the same reasons Plaintiff's other Fourth Amendment claims fail, Plaintiff cannot state a Section 1983 against Defendant Patton under the Fourth Amendment. Therefore, the

14

Court will dismiss with prejudice the Fourth Amendment allegations related to Defendant Patton in Counts 1–2, 6, and 9–10.

2. Plaintiff's Fourteenth Amendment Claims Against Patton

Plaintiff's allegations related to Defendant Patton in Counts 6 and 9–10 are limited. She alleges he is a police officer with the Connellsville Police without supervisory authority. (SAC at ¶ 7.) More substantively, Plaintiff avers that Patton knew or should have known that Plaintiff was acting as a confidential informant without consent of a guardian, (E.g., id. at ¶ 100), and that Patton failed to intervene when he knew or should have known Reese was engaging in illegal sexual conduct with Plaintiff (E.g., id. at ¶ 121–22.).

The Court agrees with Moving Defendants that these allegations are insufficient. First, Plaintiff has failed to aver that Patton *himself* violated a clearly-establish federal right of Plaintiff. Second, Plaintiff has not put forth any facts which demonstrate a Constitutional violation took place in Patton's presence, and therefore, he could not have failed to intervene.

First, Plaintiff's allegations do not demonstrate that Patton had personal involvement in violating Plaintiff's rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207–08 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). While the Court has already concluded that Plaintiff's allegations of misconduct against Reese amount to a violation of her federally protected rights, her averments as to Patton are entirely different. By Plaintiff's account, when Patton participated in use of Plaintiff as a confidential informant the pat-down of her person was not performed inappropriately. Further, Patton expressed concerns that use of Plaintiff as an informant was "not consistent with proper police procedure" which were discounted by Reese and were not

against any explicit Connellsville Police policy. (SAC at ¶¶ 40, 41.) Plaintiff admits that that the lack of policy "provided justification" for use of Plaintiff as an informant. (Id. at ¶ 43.)

These facts, taken as true, demonstrate that at most Patton thought it might be unwise to use Plaintiff as an informant because she was a juvenile, but neither Reese nor the Connellsville Police Department gave him reason to believe that such use was unconstitutional. He did not have actual knowledge and he did not personally direct any wrongdoing of a Constitutional nature. Rode, 845 F.2d at 1207. Plaintiff has cited no authority to support that it is a violation of federal law or a Constitutional right for Plaintiff to be used, in any capacity, as a confidential informant because of her status as a juvenile. Similarly, the Court is not aware of any. As Plaintiff has not demonstrated that Patton has personal involvement in a violation of her federally protected rights, Patton is entitled to dismissal of these claims.

Even if, however, the Court were to find a Constitutional violation, it is not a violation of clearly established law. Saucier v. Katz, 533 U.S. 194, 201 (2001). As Patton did not act in a manner that contravenes a clearly established rule of law, he would be entitled to qualified immunity. Id. at 209.

Second, while police officer liability for failure to intervene may extend to conduct beyond use of excessive force, see Brackbill v. Ruff, No. 17-1046, 2018 WL 2322014, at *5–6 (M.D. Pa. May 22, 2018) (false arrest), the facts here simply do not support such a claim against Patton. Plaintiff avers that when Patton saw Plaintiff entering Reese's vehicle "the beginnings of a violation of Plaintiff's constitutional rights was taking place in Patton's presence." (Response at 15.) This is too much. Plaintiff does not aver that Patton witnessed inappropriate sexual conduct at that time (or at any other time) between Reese and Plaintiff. He did not speak to Plaintiff or to Reese—he was a removed observer with limited involvement. There was simply

16

no Constitutional violation which occurred in his presence.  Further, the Court agrees with Defendant that it is far more likely Patton thought Plaintiff was entering Reese's vehicle as part of her work as a confidential informant.  Patton cannot be liable for failure to intervene in what looked like a confidential informant getting into a police officer's car and driving away.

Therefore, the Court will dismiss all allegations against Defendant Patton with prejudice.

        d.        Plaintiff's Demand for Punitive Damages

While Plaintiff conceded that she may not recover damages against the City of Connellsville, she continues to pursue those claims against Patton, Capitos and Reese ("Individual Defendants") in their personal and official capacities.

Suits naming officers in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55 (1978).  Suits should against state officials in their official capacity are therefore treated as suits against the State.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  As such, punitive damages are not available.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

On the other hand, "personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Punitive damages may be recovered when "the defendant's conduct is shown to be motivated by evil movie or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1981).  The Third Circuit routinely upholds such awards when a defendant's conduct triggers liability under the Smith standard.  E.g., Springer v. Henry, 453 F.3d 268, 282–83 (3d Cir. 2006)

(upholding punitive damages against defendants in their individual capacity); Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 833 (3d Cir. 1994) (same).

Under this clear authority, the Court strikes Plaintiff's demand for punitive damages against the Individual Defendants in their official capacities, but declines to strike such relief sought against them in their personal capacities at this early stage of litigation.

## II. ORDER

Moving Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 24) is **GRANTED IN PART** and **DENIED IN PART**. Defendants City of Connellsville Police Department and Thomas Patton are **DISMISSED WITH PREJUDICE** from this action. Plaintiff's Counts alleging Fourth Amendment violations (all of Count 3 and parts of Counts 5, 7–8) are **DISMISSED WITH PREJUDICE** as to that alleged Constitutional violation. Counts 11–16, alleging liability under the Pennsylvania Constitution, are **DISMISSED WITH PREJUDICE**. Counts 17 and 18 are **DISMISSED WITH PREJUDICE** as to the Moving Defendants. Counts 17 and 18 remain as to Defendant Ryan Reese. The Court **STRIKES** Plaintiff's demand for punitive damages against the Individual Defendants in their official capacities.

Moving Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's allegations in Counts 4, 5, and 7–8 that her Fourteenth Amendment rights were violated by Capitos and the City of Connellsville.

IT IS SO ORDERED.

December 27, 2018               s\Cathy Bissoon
                                Cathy Bissoon
                                United States District Judge

cc (via ECF email notification):
All Counsel of Record